IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARSHALL P. CLINE and MARY ELAINE CLINE, | § § § | |
| Plaintiffs, | § § § | |
| VS. | § § | Civil Action No. 3:14-CV-1565-D |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR LONG BEACH MORTGAGE LOAN TRUST 2003-1, ITS SUCCESSORS AND ASSIGNS, | § § § § § § § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action arising from the attempted foreclosure of plaintiffs' residential property, defendant moves for summary judgment and for leave to file a counterclaim. Concluding that defendant is entitled to summary judgment, the court grants the motion and dismisses plaintiffs' action for declaratory judgment.  The court also grants defendant's motion for leave to file a counterclaim, and it vacates the trial setting.

I

Plaintiffs Marshall P. Cline and Mary Elaine Cline own residential property in Dallas (the "Property").[1]  In 2002 they obtained a home equity loan from Long Beach Mortgage

---

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

Company ("Long Beach"), executing a Texas Home Equity/Adjustable Rate Note ("Note") and a Texas Home Security Instrument ("Security Instrument") that granted Long Beach a security interest in the Property. Sometime thereafter, the Note and Security Instrument were assigned to Deutsche Bank National Trust Company ("Deutsche Bank"), the current mortgagee of record.

Plaintiffs encountered financial difficulty in 2007 and 2008 and defaulted on the Note. In June 2008 they entered into a Loan Modification Agreement that capitalized past due amounts and established new repayment terms for the Note effective July 1, 2008, including a modified principal balance. The first modified payment was due on August 1, 2008.

Even after obtaining the Loan Modification Agreement, plaintiffs again defaulted. The loan servicer[2] gave them Notice of Intent to Accelerate and Demand for Payment, demanding payment of past due monthly payments, and stating that the entire indebtedness under the Note would accelerate if the past due amounts were not paid. Plaintiffs failed to pay the past due amount, and on January 26, 2009, Deutsche Bank notified plaintiffs via a Notice of Acceleration that the full amount of the Note had been accelerated.

After receiving the Notice of Acceleration, plaintiffs contacted the servicer to pursue a stay-in-home option; the servicer agreed to work with them toward a possible loan modification or other workout assistance to avoid foreclosure. On August 5, 2009 the

---

[2]Select Portfolio Servicing, Inc. ("SPS") is the current servicer of the loan on behalf of Deutsche Bank, and it has been the servicer since May 1, 2013. Unless the context otherwise requires, the court will refer to SPS and the prior loan servicers collectively as the "servicer."

servicer informed plaintiffs that their loan might be eligible for a loan modification review. That same day, the servicer sent plaintiffs a new Notice of Intent to Accelerate and Demand for Payment, demanding payment of several past due monthly installments and other charges, and giving plaintiffs until September 4, 2009 to avoid acceleration by making payment. On August 15, 2009 plaintiffs were approved for a Trial Plan Agreement, which they executed on August 28. They agreed that the loan was past due for the September 1, 2008 through August 1, 2009 payments, and that they would make three identical monthly payments on or before September 1, October 1, and November 1, 2009, respectively. Once the payments were made, the servicer would consider a permanent workout solution. Plaintiffs made three payments, each of which was applied to the loan. These were the last payments plaintiffs made on the Note.

From October 2009 through November 2010, plaintiffs exchanged correspondence with the servicer regarding their application for a loan modification. On February 18, 2010 the servicer informed plaintiffs that their application for loan modification had been denied because they did not qualify under the applicable government guidelines, and that they might be eligible for other modification programs that the servicer offered. Plaintiffs thereafter submitted a second application for a loan modification, which was denied on November 19, 2010 on the basis that they did not qualify for a loan modification under the federal government's Home Affordable Modification Program or any of the servicer's modification programs.

On January 7, 2011 the servicer provided plaintiffs an Acceleration Warning (Notice

- 3 -

of Intent to Foreclose), advising them that their loan was in default for failure to make the

November 1, 2008 payment and subsequent payments.  The notice warned plaintiffs that the

maturity date of the loan would be accelerated if they failed to pay the past due amount

within 32 days.  Plaintiffs did not cure the default, and on August 26, 2011 the servicer

provided plaintiffs a Notice of Acceleration.

In 2013 Deutsche Bank filed suit in state court seeking an order permitting it to

foreclose on the Property.  Plaintiffs answered the lawsuit, asserting a general denial and

affirmative defenses.  On November 27, 2013 plaintiffs filed the present lawsuit in state

court, seeking a declaratory judgment that Deutsche Bank's right to foreclose on the Property

was barred by the statute of limitations, and they moved to dismiss the August 2013

foreclosure action, which the state court granted.  Deutsche Bank later removed the instant

suit to this court.  It now moves for summary judgment and for leave to file a counterclaim.

Plaintiffs oppose both motions.

II

When a party moves for summary judgment on a defense on which it will have the

burden of proof at trial it "must establish 'beyond peradventure all of the essential elements

of the . . . defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943,

962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194

(5th Cir. 1986)).  This means that the moving party must demonstrate that there are no

genuine and material fact disputes and that it is entitled to summary judgment as a matter of

law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "Th[is] court

- 4 -

has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at \*10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Before addressing Deutsche Bank's motion for summary judgment, the court will consider plaintiffs' objections to Deutsche Bank's summary judgment evidence.

A

Plaintiffs object to 28 of the exhibits on which Deutsche Bank relies in support of its summary judgment motion.   These exhibits are attached to the declaration of Diane Weinberger ("Weinberger"), the custodian of records for Select Portfolio Servicing, Inc. ("SPS"), the current loan servicer for plaintiffs' loan.  *See supra* note 2.  With one exception,[3] each objection rests on Weinberger's purported lack of personal knowledge to lay the foundation for admitting into evidence the records of the entities whom SPS succeeded as loan servicer.

---

[3]Plaintiffs object to Exhibit A-13, D. App. 127-130, on the ground that it is a payment history that is merely a purported summary of plaintiffs' loan history and is therefore hearsay.  The court overrules this objection because Weinberger's declaration authenticates this exhibit, *see* D. App. 008, and establishes the requirements of Fed. R. Evid. 803(6), the business records exception to the hearsay rule, D. App. 006.  Plaintiffs include a similar objection as part of their challenge to Exhibit A-12, which the court overrules for the same reasons.

B

Under Fed. R. Evid. 803(6), evidence that would otherwise be inadmissible as hearsay is admissible under the business records exception if the requirements for admitting the evidence "are shown by the testimony of the custodian or another qualified witness." Fed. R. Evid. 803(6)(D); *see also United States v. Box*, 50 F.3d 345, 356 (5th Cir. 1995) (noting authentication requirement under Rule 803(6)). "There is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy." *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990) (citing *United States v. Iredia*, 866 F.2d 114, 119-20 (5th Cir. 1989)). "Furthermore, there is no requirement that the records be created by the business having custody of them." *Id.* (citing *Miss. River Grain Elevator, Inc. v. Bartlett & Co., Grain*, 659 F.2d 1314, 1319 (Former 5th Cir. 1981)).

> Rule 803(6) allows business records to be admitted if witnesses testify that the records are integrated into a company's records and relied upon in its day to day operations. Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity.

*Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999) (internal citations omitted) (quoting *United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992)); *see also Chilmark Fin. Co. v. Spinks Joint Venture*, 87 F.3d 1312, 1312 (5th Cir. 1996) (per curiam) ("Indeed, business records produced by another but integrated into the records of the party offering them are inadmissible.") (citing *United States v. Ulrich*, 580 F.2d 765, 771-72 (5th Cir. 1978); *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992)).

Moreover, even before Rule 803(6) was amended effective December 1, 2014, it was settled that "[w]here circumstances indicate that the records are trustworthy, the party seeking to introduce them does not have to present the testimony of the party who kept the record or supervised its preparation." *Miss. River Grain*, 659 F.2d at 1319 (quoting *United States v. Veytia-Bravo*, 603 F.2d 1187, 1191-92 (5th Cir. 1979)); see *also Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980) ("Any person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records."). As amended effective December 1, 2014, Rule 803(6)(E) provides that if the conditions for admitting a business record are met, the evidence is admissible if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

C

The court concludes that the 28 exhibits to which plaintiffs object are admissible. Each document falls within the Fed. R. Evid. 803(6) hearsay exception. In her declaration, Weinberger avers, in pertinent part:

> SPS maintains a computer database (the "Loan Records") . . .
> with respect to the mortgage loans that SPS services. The Loan
> Records also include electronic images of the original loan
> documents and of correspondence relating to such loans. The
> Loan Records are kept in the course of SPS's regularly
> conducted activity and it is the regular practice of SPS to make
> the records in the Loan Records. The entries in the Loan
> Records are made at the time of the events and conditions they
> describe, either by people with first-hand knowledge of those

- 7 -

> events and conditions, or from information provided by people
> with such first-hand knowledge. The Loan Records kept by SPS
> also include any documents and files that SPS acquired from
> prior servicers of the mortgage loans, which are incorporated,
> kept, and relied on by SPS in the ordinary course of SPS'[s]
> business.

D. App. 006.  This testimony is sufficient to satisfy each of the requirements of Rule 803(6)

and to establish that each of the documents in question has been integrated into SPS's records

and relied upon by SPS in its day to day operations.  And plaintiffs have not shown that the

source of information or the method or circumstances of preparation indicate a lack of

trustworthiness.

Accordingly, the court overrules plaintiffs' objections to Deutsche Bank's summary

judgment evidence.

IV

The court now considers the merits of Deutsche Bank's motion for summary

judgment.

A

Plaintiffs seek a declaratory judgment that Deutsche Bank's right to foreclose on the

Property is barred by the four-year statute of limitations prescribed by Tex. Civ. Prac. &

Rem. Code Ann. § 16.035 (West 2002), because more than four years have elapsed since

Deutsche Bank accelerated plaintiffs' loan on January 26, 2009.  Deutsche Bank moves for

summary judgment on two grounds, but the court need only consider the contention that

because the undisputed facts show that it abandoned the January 2009 acceleration, its

- 8 -

foreclosure cause of action did not accrue from that date and is not time-barred.[4]

B

Deutsche Bank maintains that the January 2009 acceleration was abandoned by the parties' subsequent actions and agreements, including but not limited to, the fact that: (1) the parties entered into the Trial Plan Agreement on August 28, 2009; (2) plaintiffs tendered, and Deutsche Bank accepted, three payments on the loan from August 2009 through November 2009; (3) the parties engaged in discussions from August 2009 to November 2010 about a potential loan modification to avoid disclosure; and (4) plaintiffs were sent new notices of intent to accelerate, as well as numerous offers to reinstate, under which plaintiffs were given the opportunity to cure their defaults and reinstate the loan for less than the accelerated amount. Deutsche Bank contends that these actions are sufficient to constitute abandonment of acceleration.

Plaintiffs maintain that there are genuine fact issues concerning whether Deutsche Bank abandoned its acceleration of the note in question before the statute of limitations expired. Plaintiffs do not point to any disputed facts regarding whether Deutsche Bank abandoned the January 2009 acceleration; rather, they disagree with Deutsche Bank's position regarding the legal significance of the undisputed facts. Plaintiffs contend that the cases Deutsche Bank cites are distinguishable and do not support the conclusion that the actions that Deutsche Bank and plaintiffs took following the January 2009 acceleration

---

[4]Deutsche Bank also contends that plaintiffs are estopped from asserting limitations as a defense under the doctrine of quasi-estoppel. The court need not address this argument.

constitute abandonment of the acceleration; that all of the actions taken by the parties were merely part of a discussion regarding alternatives to modification; and that there is ample evidence that Deutsche Bank did not intend to abandon the acceleration.

C

Tex. Civ. Prac. & Rem. Code Ann. § 16.035 provides that "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues." When this four-year period expires, "the real property lien and a power of sale to enforce the real property lien become void." Section 16.035(d); *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App. 2012, no pet.) (quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001)). If the noteholder has the option to accelerate, then the date of accrual is the date that the holder exercises the option. *Khan*, 371 S.W.3d at 353 (citing *Holy Cross*, 44 S.W.3d at 566). "While accrual is a legal question, whether a holder has accelerated a note is a fact question." *Holy Cross*, 44 S.W.3d at 568.

Abandoning acceleration before the limitations period expires restores the contract to its original condition, including the note's original maturity date. *Khan*, 371 S.W.3d at 353; *Holy Cross*, 44 S.W.3d at 567; *Clawson v. GMAC Mortg., LLC*, 2013 WL 1948128, at *3 (S.D. Tex. May 9, 2013). Thus if a noteholder abandons acceleration, it no longer must foreclose within four years from the date of acceleration. Texas courts and courts in this circuit have held that "the parties can abandon acceleration and restore the contract to its original terms by the parties' agreement or actions." *Khan*, 371 S.W.3d at 356 (citing *San*

- 10 -

*Antonio Real-Estate, Bldg. & Loan Ass'n v. Stewart*, 61 S.W. 386, 388 (Tex. 1901)); *see also, e.g., In re Rosas*, 2014 WL 1779437, at *10 (Bankr. W.D. Tex. May 5, 2014); *Clawson*, 2013 WL 1948128, at *3; *Santibanez v. Saxon Mortg. Inc.*, 2012 WL 3639814, at *2 (Tex. App. Aug. 23, 2012, no pet.). Continuing to accept payments on a note while opting not to pursue other remedies is one action that indicates abandonment of acceleration, but a noteholder may also abandon acceleration by other actions, including providing account statements seeking less than the full accelerated amount and mailing new notice-of-intent-to-accelerate letters. *See Boren v. U.S. Nat'l Bank Ass'n*, 2014 WL 6892553, at *3 (S.D. Tex. Sept. 18, 2014) (citing *Leonard v. Ocwen Loan Servicing, LLC*, 2014 WL 4161769, at *5 (S.D. Tex. Aug. 19, 2014) (holding that account statements put debtor on notice that lender had abandoned previous acceleration)), *rec. adopted in relevant part*, 2014 WL 5486100 (S.D. Tex. Oct. 29, 2014). Joint action of the parties is not required to abandon the acceleration. Rather, a party may abandon the acceleration unilaterally. *See Clawson*, 2013 WL 1948128, at *4 (citing cases for proposition that lender may abandon acceleration "without express agreement from the borrower").

D

The court concludes that there is no genuine fact issue that Deutsche Bank, through its actions, abandoned the January 2009 acceleration of plaintiffs' debt.

Deutsche Bank first accelerated the Note on January 26, 2009. But on August 5, 2009 Deutsche Bank's servicer sent plaintiffs a new Notice of Intent to Accelerate and Demand for Payment, which did not demand the full accelerated amount of the loan, but only

demanded payment of the 12 past due monthly installments on the loan from September 1, 2008 through August 1, 2009, totaling $119,684.46.  Later that same month, the parties entered into the Trial Plan Agreement, which stated that plaintiffs' loan was due for the months of September 1, 2008 through August 1, 2009, and did not state that the full accelerated amount of the Note was due.  Under the Trial Plan Agreement, plaintiffs tendered payments in September, October, and November 2009 of $9,158.90, which Deutsche Bank applied to the remaining balance on the Note.  From August 2009 to January 2011, plaintiffs submitted two separate loan modification applications, both of which were denied, but at no point during these 18 months did Deutsche Bank attempt to accelerate the loan or pursue foreclosure while plaintiffs were being reviewed for a possible loan modification.  On January 7, 2011, after Deutsche Bank completed its evaluation of plaintiffs' eligibility for a loan modification, it sent plaintiffs an Acceleration (Notice of Intent to Foreclose), stating that the loan was past due for the payments since the November 1, 2008 payment, and it gave plaintiffs 32 days to cure the default by paying the past due sums.  Finally, on August 26, 2011, a law firm representing the servicer of plaintiffs' loan sent plaintiffs a Notice of Acceleration, demanding the full accelerated amount of the note.

The August 5, 2009 default notice and the Trial Plan Agreement, which each listed less than the full amount of the Note as due, Deutsche Bank's acceptance of three payments on the Note in less than the full accelerated amount, and the subsequent January 7, 2011 Acceleration (Notice of Intent to Foreclose) were sufficient to put plaintiffs on notice that Deutsche Bank was no longer seeking to collect the full balance of the Note and had

abandoned the January 2009 acceleration.  *See Leonard*, 2014 WL 4161769, at *4-5.

This result is supported by recent decisions from other courts within this circuit.  In *Leonard* the court held that a lender had abandoned acceleration when it sent subsequent account statements listing less than the full amount as due, "put[ting the borrowers] on notice that [the lenders] were no longer seeking to collect the full balance of the note."  *Id.* at *4-5.  In *Boren* the court concluded a lender had abandoned acceleration by sending subsequent notice-of-default letters listing less than the full amount of the loan as due, and by sending subsequent notice-of-intent-to-accelerate letters.  *Boren*, 2014 WL 6892553 at *3-4.  And in *Meachum v. Bank of New York Mellon Trust Co.*, 2015 WL 765982 (N.D. Tex. Feb. 20, 2015) (Godbey, J.), Judge Godbey concluded the lender had abandoned acceleration by sending a subsequent notice of default letter listing an amount less than the full amount of the note as due, and by sending a subsequent notice-of-intent-to-accelerate letter. *Id.* at *1.

Plaintiffs attempt to distinguish *Leonard* and *Boren* by arguing that the Trial Plan Agreement, the payments thereunder, the loan modification applications, and the subsequent notices of default were all merely part of an ongoing discussion between plaintiffs and Deutsche Bank.  Plaintiffs assert that because this ongoing discussion did not result in any kind of loan modification, it does not evidence any intent to abandon acceleration.  The court disagrees.  In fact, the court in *Leonard* rejected a similar argument, concluding that the one-sided notices sent by the lender stating that only a portion of the full outstanding loan amount was due could not reasonably be interpreted as a "discussion" between the parties.  *Leonard*, 2014 WL 4161769, at *5.  Rather, the court found that the lender "communicated explicitly

to plaintiffs the intent to seek less than the accelerated amount of the full default." *Id.* Similarly, in the present case, Deutsche Bank, through its servicer, sent multiple communications to plaintiffs clearly demanding less than the full amount of the loan. These communications cannot reasonably be construed as merely a discussion.

The court concludes that Deutsche Bank has demonstrated beyond peradventure that it properly abandoned the January 26, 2009 acceleration through its actions, and, therefore, that the four-year limitations period under § 16.035(a) did not accrue on January 26, 2009. Accordingly, Deutsche Bank's motion for summary judgment is granted, and plaintiffs' declaratory judgment claim is dismissed with prejudice.

V

The court now considers Deutsche Bank's motion for leave to file a counterclaim.

A

Fed. R. Civ. P. 16(b)(3)(A) provides that the court's "scheduling order must limit the time to . . . amend the pleadings[.]" When, as here, the deadline for seeking leave to amend pleadings has expired, a court considering a motion to amend must first determine under the good cause standard of Rule 16(b)(4) whether to modify the scheduling order. *See, e.g., S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 814 (N.D. Tex. 2009) (Fitzwater, C.J.). To meet this standard, the moving party must show that, despite its diligence, it could not reasonably have met the scheduling order deadline. *See S & W Enters.*, 315 F.3d at 535. Only if the movant first satisfies the requirements of Rule 16(b)(4) must the court next

- 14 -

determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." *See S & W Enters.*, 315 F.3d at 536; *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.).

On June 16, 2014 the court entered the scheduling order in this case, setting August 15, 2014 as the deadline for a party to move for leave to amend the pleadings and November 7, 2014 as the deadline for the parties to complete discovery. The parties later filed an agreed motion to modify scheduling order, and the court reset the deadline for the parties to complete discovery to February 3, 2015. Deutsche Bank filed the instant motion for leave to file a counterclaim on February 2, 2015. Because the motion was filed over five months after the deadline for moving for leave to amend the pleadings, Deutsche Bank must first establish good cause under Rule 16(b)(4) to modify the scheduling order.

B

The court assesses four factors when deciding whether an untimely motion for leave to amend establishes good cause under Rule 16(b) (4): "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted). The court considers the four factors holistically, and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

- 15 -

C

1

The court first considers Deutsche Bank's explanation for failing to move by the court-ordered deadline for leave to amend its answer to include a counterclaim for breach of contract/action for judicial or non-judicial foreclosure. Deutsche Bank asserts that it deferred pursuing this counterclaim in order to minimize the costs and disruption to all parties in the focused pursuit of settlement alternatives.[5] The court concludes that Deutsche Bank's explanation for failing to timely move for leave to amend is not a persuasive one. Deutsche Bank first asserted its breach of contract claim/action for foreclosure in state court a full year prior to the court-ordered deadline for seeking leave to amend. Deutsche Bank cannot reasonably argue that it was unaware of this claim in time to move for leave to amend. The court therefore concludes this factor weighs against modifying the scheduling order.

2

Under the second factor, the court considers the importance of the amendment. The court concludes that permitting Deutsche Bank to assert this counterclaim is important

---

[5]Deutsche Bank also contends that its counterclaim for breach of contract/action for foreclosure may be premature if the court determines that Deutsche Bank abandoned any prior acceleration of plaintiffs' loan, and its motion for leave to file a counterclaim would be moot. The court has concluded that Deutsche Bank abandoned its January 26, 2009 acceleration notice, and has therefore dismissed plaintiffs' action for declaratory judgment. But the court has not held, nor has Deutsche Bank asked the court to hold, that Deutsche Bank abandoned its August 26, 2011 notice of acceleration. Because the court has not concluded that Deutsche Bank abandoned this notice of acceleration, the counterclaim is not premature.

because it may be a compulsory counterclaim that would be barred if not asserted in this case.  *See, e.g., Murphy v. HSBC Bank USA*, 2014 WL 1653081, at *5 (S.D. Tex. Apr. 19, 2014).  Therefore, this factor weighs in favor of granting Deutsche Bank's motion.

3

Under the third factor, the court considers the potential for prejudice if the court permits Deutsche Bank to amend the pleadings to assert a counterclaim for breach of contract/action for judicial or non-judicial foreclosure.  Deutsche Bank contends that although it is requesting leave to file its counterclaim after the court-ordered deadline, it is only seeking to enforce its right to foreclose.  Deutsche Bank posits that plaintiffs cannot legitimately maintain that they are surprised or prejudiced by this counterclaim given that their lawsuit results directly from their effort to prevent foreclosure.  Plaintiffs respond that they would be prejudiced because the discovery deadline has already expired, and they would be unable to conduct any discovery regarding Deutsche Bank's counterclaim.

The court holds that the potential prejudice that plaintiffs have identified can be cured by such procedural steps as reopening discovery and resetting the trial.  Therefore, this factor weighs in favor of modifying the scheduling order.

4

Under the fourth factor, the court considers the availability of a continuance to cure prejudice.  This case is currently set for a two-week docket in August 2015.  The court can continue the trial to cure any prejudice caused by allowing Deutsche Bank to assert this counterclaim.

5

The court now considers the four factors holistically. "It does not mechanically count the number of factors that favor each side." *Serv. Temps*, 2009 WL 3294863, at *3. Assessing the factors as a whole, the court holds that Deutsche Bank has met the good cause standard for modifying the scheduling order. Although Deutsche Bank has not provided a particularly persuasive reason for why it failed to move for leave until after the deadline, the amendment it seeks is important, the court can take steps to address any potential prejudice to plaintiffs, and the court can grant a trial continuance.

D

The court next evaluates under the Rule 15(a) standard whether leave to amend should be granted. *S & W Enters.*, 315 F.3d at 536. "The court should freely give leave when justice so requires." Rule 15(a)(2). The court can discern no compelling reason under this lenient standard to deny Deutsche Bank leave to amend. The court therefore grants Deutsche Bank's motion. Deutsche Bank must file its counterclaim within 21 days of the date this memorandum opinion and order is filed.

VI

For the reasons explained above, the court vacates the trial setting. The court will reset the case for trial by separate order.

* * *

For the foregoing reasons, the court grants Deutsche Bank's motion for summary judgment and its motion for leave to file a counterclaim, and it vacates the trial setting.

**SO ORDERED**.

July 2, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE